1  **WO**

2

3

4

5

6                 **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8

9   Victor Lizardi,                              No. CV-19-00061-TUC-JAS (MSA)

10                 Petitioner,                    **REPORT AND**
                                                  **RECOMMENDATION**
11  v.

12  Mark Brnovich, et al.,

13                 Respondents.

14

15          This matter is on referral pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil

16  Procedure.  Pending before the Court is Petitioner Victor Lizardi's petition for a writ of

17  habeas corpus under 28 U.S.C. § 2254.  (Doc. 1.)  Respondents Mark Brnovich and David

18  Shinn have filed an answer, to which Lizardi has replied.  (Docs. 16, 20.)  For the following

19  reasons, the Court will recommend that the petition be denied and dismissed with prejudice.

20                                **Background**

21          In February 2013, Lizardi was convicted of first-degree murder and possession of a

22  deadly weapon by a prohibited possessor.  (Doc. 17 at 4.)[1]  The Arizona Court of Appeals

23  described the underlying facts as follows:

24          In August 2011, Lizardi was visiting friends in their apartment.  He showed
            one of the residents bullets he had placed in the cabinet above the refrigerator.
25          Lizardi left the apartment, but returned later with a gun, which appeared to
            be unloaded because he cocked it repeatedly.  After another resident, D.C.,
26          told Lizardi to leave with the gun, D.C. saw him reach for the top of the
            refrigerator before walking to the outside door.  Shortly thereafter, D.C.
27

28  ───────────────
    [1]    Record citations refer to the page numbers generated by the Court's electronic filing
    system.

1
2
3

heard a gunshot, ran toward the sound, and observed Lizardi running out of the apartment.  The victim, M.S., was dead on his bed from a single gunshot wound to the mouth.  Soon after the shooting, Lizardi sent a text message to one of the residents saying, "Don't say sh--.  I did everyone a favor."

4

(*Id.*)

5

Lizardi's direct appeal was unsuccessful.  (*Id.* at 3–13, 102.)  In December 2014,

6

Lizardi filed a notice of request for post-conviction relief. (Doc. 18 at 3.)  He subsequently

7

filed a post-conviction petition, raising several claims of ineffective assistance of counsel.

8

(*Id.* at 10–11.)  These claims were rejected by the trial court and the Arizona Court of

9

Appeals. (*Id.* at 89–93, 162–67.)  The Arizona Supreme Court denied review. (*Id.* at 169.)

10

Lizardi initiated this action in February 2019. (Doc. 1.)  He raises several claims of

11

ineffective assistance of counsel.  He also appears to raise multiple due process claims.  In

12

their answer, Respondents contend that Lizardi's due process claims are procedurally

13

defaulted without excuse, and that Lizardi's ineffective-assistance claims are without

14

merit.

15

**Due Process**

16

The petition was filed after April 24, 1996, and is therefore governed by the

17

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Murray v.*

18

*Schriro*, 745 F.3d 984, 996 (9th Cir. 2014).  Under AEDPA, "[b]efore a federal court may

19

grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."

20

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see* 28 U.S.C. § 2254(b)(1)(A).  To

21

properly exhaust a claim, the claim "must include reference to a specific federal

22

constitutional guarantee, as well as a statement of the facts that entitle the petitioner to

23

relief."  *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996) (citing *Picard v. Connor*, 404

24

U.S. 270, 276–77 (1971)).  "[E]xcept in habeas petitions in life-sentence or capital cases,

25

claims of Arizona state prisoners are exhausted for purposes of federal habeas once the

26

Arizona Court of Appeals has ruled on them."  *Swoopes v. Sublett*, 196 F.3d 1008, 1010

27

(9th Cir. 1999) (per curiam).

28

1      Lizardi purports to raise several due process claims in this proceeding.[2]  However,

2   as Respondents correctly point out, Lizardi did not raise any due process claims in his state-

3   court briefing.  (*See* Doc. 18 at 8–25 (post-conviction petition), 81–87 (reply to post-

4   conviction petition), 95–112 (petition for review).)  Indeed, the trial court and the Arizona

5   Court of Appeals did not understand Lizardi to be raising due process claims, as their

6   analyses were limited to claims of ineffective assistance of counsel.  (*See id.* at 89–93 (trial

7   court's decision), 162–67 (appellate court's decision).)  It is thus clear from the record that

8   Lizardi did not properly exhaust his claims.  *See Picard*, 404 U.S. at 276–78 (finding an

9   equal-protection claim unexhausted because it was not raised in state court).

10      "If a petitioner's claims are unexhausted, the district court can dismiss the petition

11   without prejudice to give the prisoner a chance to return to state court to litigate his

12   unexhausted claims before he can have the federal court consider his claims."  *Franklin v.*

13   *Johnson*, 290 F.3d 1223, 1231 (9th Cir. 2002); *see Rhines v. Weber*, 544 U.S. 269, 277

14   (2005) (discussing stay-and-abeyance procedure for unexhausted claims).  However, a

15   failure to exhaust is not always correctable: If a claim is "unexhausted and 'state procedural

16   rules would now bar the petitioner from bringing the claim in state court,'" that claim is

17   procedurally defaulted.  *Rodney v. Filson*, 916 F.3d 1254, 1259 (9th Cir. 2019) (quoting

18   *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (en banc)).

19      There are two state procedural rules preventing Lizardi from returning to state court.

20   Lizardi's claim is that his "conviction was obtained . . . in violation of the United States

21   [Constitution]."  Ariz. R. Crim. P. 32.1(a).  As such, it is precluded under Arizona Rule of

22   Criminal Procedure 32.2(a)(3), which bars claims that could have been raised "in any

23   previous post-conviction proceeding."  It is also untimely under Arizona Rule of Criminal

24   Procedure 32.4(b)(3)(A), which requires that a notice for a claim under Rule 32.1(a) be

25   filed "within 30 days after the issuance of the mandate in the direct appeal."  Therefore,

26   Lizardi's due process claims are procedurally defaulted.

27

28   [2]    Lizardi's references to "due process" are merely tacked onto his ineffective-assistance claims.  He offers no additional argument explaining why his due process rights were violated.

1   "Federal review of procedurally defaulted claims is barred unless the habeas

2   petitioner 'can demonstrate cause for the default and actual prejudice as a result of the

3   alleged violation of federal law, or demonstrate that failure to consider the claims will result

4   in a fundamental miscarriage of justice.'" *Rodney*, 916 F.3d at 1259 (quoting *Coleman v.*

5   *Thompson*, 501 U.S. 722, 750 (1991)).  Lizardi has not argued that some external factor

6   prevented him from raising his due process claims in state court, nor is the existence of any

7   such factor evident from the record.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986)

8   (explaining that "cause" for a procedural default must be "external to the defense").  Lizardi

9   also has not argued that he is actually innocent, such that the denial of review would

10  constitute a fundamental miscarriage of justice.  *See id.* at 495–96 (explaining that

11  "fundamental miscarriage of justice" means "actual innocence").  Therefore, federal

12  habeas review of Lizardi's due process claims is barred.  *See Rodney*, 916 F.3d at 1259.

13  **Ineffective Assistance of Counsel**

14  **I.      Legal Standards**

15  **A.      AEDPA**

16  Under AEDPA, a federal court may not grant habeas relief on any claim that was

17  decided on the merits in state court unless the decision "was contrary to, or involved an

18  unreasonable application of, clearly established Federal law, as determined by the Supreme

19  Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable

20  determination of the facts in light of the evidence presented in the State court proceeding,"

21  *id.* § 2254(d)(2).  "A habeas petitioner meets this demanding standard only when he shows

22  that the state court's decision was 'so lacking in justification that there was an error well

23  understood and comprehended in existing law beyond any possibility for fairminded

24  disagreement.'"  *Dunn v. Madison*, 138 S. Ct. 9, 11 (2017) (per curiam) (quoting

25  *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

26  **B.      *Strickland v. Washington***

27  The clearly established law governing claims of ineffective assistance of counsel is

28  set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner

1   asserting a claim of ineffective assistance of counsel must show both deficient performance
2   and prejudice.  *Id.* at 687.  To establish deficient performance, the petitioner "must show
3   that counsel's representation fell below an objective standard of reasonableness."  *Id.* at
4   688.  To establish prejudice, the petitioner "must show that there is a reasonable probability
5   that, but for counsel's unprofessional errors, the result of the proceeding would have been
6   different.  A reasonable probability is a probability sufficient to undermine confidence in
7   the outcome."  *Id.* at 694.  Review of ineffective-assistance claims under AEDPA is
8   "doubly deferential" because "*Strickland* instructs courts to review a defense counsel's
9   effectiveness with great deference, and AEDPA requires federal courts to defer to the state
10  court's decision unless its application of Supreme Court precedent was objectively
11  unreasonable."  *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing
12  *Strickland*, 466 U.S. at 689; *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

13  **II.      Discussion**

14          **A.      Claim One**

15          Lizardi contends that counsel were ineffective for failing to adequately impeach
16  Paul Hoiland, a friend of Lizardi and a key witness for the prosecution.  Hoiland was in the
17  apartment moments before the victim was shot and was observed running away from the
18  scene in close proximity to Lizardi.  (Doc. 19-2 at 53–54.)  At trial, Hoiland testified that
19  he observed Lizardi with a handgun and bullets before the shooting.  (*Id.* at 55–57.)
20  Hoiland also testified that he heard a gunshot as he was leaving the apartment, and that he
21  saw Lizardi running out of the apartment immediately afterward.  (*Id.* at 53–54.)

22          Lizardi faults counsel for not highlighting all of Hoiland's criminal convictions and
23  prior inconsistent statements.  Because Lizardi's theory of the case was that Hoiland
24  committed the murder, Lizardi argues that anything less than full impeachment constituted
25  prejudicially deficient representation.  The Arizona Court of Appeals rejected this claim,
26  finding that Lizardi had failed to show deficient performance.  (Doc. 18 at 164–65.)  This
27  was an objectively reasonable application of *Strickland*.

28          Counsel is given "great deference" with respect to "tactical decisions at trial,"

1    including whether and how to cross-examine a witness.  *Dows v. Wood*, 211 F.3d 480, 487

2    (9th Cir. 2000) (citing *Strickland*, 466 U.S. at 688–89).  It is not deficient representation to

3    refrain from impeaching a witness whose credibility has already been undermined, or to

4    refrain from using every conceivable method of impeachment.  *See Allen v. Woodford*, 395

5    F.3d 979, 999 (9th Cir. 2005); *Carriger v. Lewis*, 971 F.2d 329, 334 (9th Cir. 1992) (en

6    banc).  Here, as the state court observed, Hoiland's credibility was undermined by the fact

7    that he appeared in a jail uniform and testified that he was in custody for stealing a car.

8    (Doc. 18 at 164.)   Thus, counsel could have reasonably determined that admission of

9    Hoiland's drug convictions would be pointless, because such evidence was collateral to the

10   case and merely cumulative to Hoiland's other conviction.

11           Additionally, while counsel did not highlight every discrepancy, counsel did point

12   out several inconsistencies between Hoiland's pretrial statements and trial testimony.

13   (Doc. 18 at 164–65.)  Notably, counsel was prepared with trial exhibits to draw these

14   inconsistencies out.  (*See* Doc. 19-2 at 58–60, 63–64.)  This suggests that counsel had

15   adequately investigated and was familiar with the evidence, such that the decision to refrain

16   from additional impeachment was tactical.  *See Strickland*, 466 U.S. at 690 (explaining that

17   "strategic choices made after thorough investigation of law and facts . . . are virtually

18   unchallengeable").

19           Under these circumstances, the state court could reasonably conclude that counsel

20   may have decided as a matter of trial strategy that "further impeachment would have

21   distracted, bored, or confused the jury . . . ."  (Doc. 18 at 165.)  The Court will recommend

22   that Lizardi's claim be denied.

23           **B.     Claim Two**

24           Lizardi's second claim has two parts.  First, Lizardi contends that counsel were

25   ineffective for not emphasizing that neither his DNA nor his fingerprints were on a bullet

26   and shell casing found at the crime scene.[3]   Second, Lizardi contends that counsel were

27   ───────────────
       [3]     Lizardi's fingerprint was found on a box of bullets, which a witness saw him reach
28   for mere moments before the shooting.  (Doc. 19-2 at 14; Doc. 19-3 at 21–22.)   The
       fingerprint was inadmissible because it was not disclosed to the defense prior to trial.  (Doc.
       19-3 at 22.)

1    ineffective for failing to present evidence and argument regarding the adequacy of the

2    forensic investigation.  The Arizona Court of Appeals rejected both contentions, again

3    finding that Lizardi had not established deficient performance. (Doc. 18 at 165.)  This was

4    an objectively reasonable application of *Strickland*.

5          Many cases hold that it is deficient performance to not investigate and present

6    exculpatory evidence, *see, e.g.*, *Hart v. Gomez*, 174 F.3d 1067, 1070–71 (9th Cir. 1999),

7    but the testing results here were not exculpatory.  At best, the results were inconclusive;

8    while they did not incriminate Lizardi, they did not incriminate anyone else either.  The

9    Court is not aware of any authority that requires counsel to present such evidence.  In light

10   of the witness testimony that Lizardi had a gun and bullets before the shooting, and that he

11   ran from the victim's room moments after the shooting, counsel could have reasonably

12   determined that the testing results added nothing to Lizardi's defense.

13         Next, Lizardi faults counsel for not highlighting a purported defect in the police

14   investigation.  Tucson police contacted Hoiland at a nearby house a few hours after the

15   shooting and seized two of Hoiland's shirts. (Doc. 19-3 at 56.)  Neither shirt was tested

16   for gunshot residue. (*Id.*)  Given his defense that Hoiland was the killer, Lizardi argues

17   that counsel should have notified the jury of this omission.  However, the jury learned that

18   the shirts had not been tested during counsel's cross-examination of the lead detective.

19   (*Id.*)  During that questioning, the detective acknowledged that gunshot residue is not

20   always visible to the naked eye, and that the presence of gunshot residue in such cases can

21   be confirmed using proper testing equipment. (*Id.*)

22         Moreover, during closing argument, counsel directed blame at Hoiland by skillfully

23   tying together various witness testimony:

24         So we're left still with the dilemma, is it possible that maybe Paul
     Hoiland, the guy who changed his shirt when he got home, the guy who wants

25   you to believe that only ten minutes had gone by when, in fact, two hours
     had gone by before the police got there, the guy who was on the phone when

26   Nicole Ollar saw him, but denies, and she's very clear about that, but denies
     that he had a phone.

27         I mean, why would he deny it?  Why would he deny it if he didn't

28   send those [texts, i.e., "I did everyone a favor."]?  Is it possible, when you

1
2

> look at all this evidence, to conclude that maybe, just maybe, Paul Hoiland
> is the one who pulled the trigger?  And if you conclude that, that maybe he
> did, then that's a reasonable doubt and you've got to acquit Victor Lizardi.

3

(Doc. 19-4 at 21.)

4

5

6

7

Counsel put Lizardi's theory of defense squarely in front of the jury.  Under these circumstances, the state court could reasonably conclude that it was not ineffective assistance to refrain from further highlighting the lack of testing.  The Court will recommend that Lizardi's claim be denied.

8

### C.     Claim Three

9

10

11

12

13

14

15

16

17

Lizardi contends that counsel were ineffective for not objecting when, during closing argument, the prosecutor stated: "There was some interaction between the victim, Mike Smith, and the defendant. . . .  Now, we don't know what the interaction was or that issue that happened with them, only two people probably know, and one of them is Mike Smith, but you can consider that when you're considering the evidence."  (Doc. 19-4 at 7.) Lizardi argues this was a direct comment on his decision not to testify, one which rendered his trial fundamentally unfair and thus required an objection.  The Arizona Court of Appeals disagreed, finding that Lizardi had not established deficient performance.  (Doc. 18 at 165–66.)  This was an objectively reasonable application of *Strickland*.

18

19

20

21

22

23

24

25

26

27

28

"Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct."  *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) (citing *Strickland*, 466 U.S. at 689).  The prosecutor's remark here was not "egregious," as it was brief and not inflammatory.  *See Zapata v. Vasquez*, 788 F.3d 1106, 1116 (9th Cir. 2015) (holding counsel performed deficiently by failing to object to "patent, inflammatory, and repeated misconduct" during closing argument).  As the state court noted, the prosecutor did not refer directly to Lizardi's failure to testify.  (Doc. 18 at 166.)  As such, an objection may have had the deleterious effect of highlighting Lizardi's decision not to testify.  *See Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (holding counsel's failure to

1    object to questionable statements, "possibly to avoid highlighting them, was a reasonable

2    strategic decision").

3         Because the prosecutor's statement "did not unquestionably cross the line," the state

4    court could reasonably conclude that counsel did not perform deficiently in failing to

5    object. *Demirdjian v. Gipson*, 832 F.3d 1060, 1073 (9th Cir. 2016).  Likewise, the state

6    court could conclude that appellate counsel was not ineffective for failing to raise this issue

7    on appeal. *See Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).

8         **D.     Claim Four**

9         Lizardi contends that counsel were ineffective for failing to file a motion to suppress

10   his statements to law enforcement.  Lizardi asserts that he had used substantial amounts of

11   methamphetamine and slept only several hours during the two weeks prior to his

12   statements.  He thus contends that his statements were involuntary, and that counsel were

13   ineffective for not trying to have them suppressed.  The Arizona Court of Appeals rejected

14   this claim, finding that Lizardi had failed to establish prejudice. (Doc. 18 at 166–67.)  This

15   was an objectively reasonable application of *Strickland*.

16        "Where the defendant claims ineffective assistance for failure to file a particular

17   motion, he must 'not only demonstrate a likelihood of prevailing on the motion, but also a

18   reasonable probability that the granting of the motion would have resulted in a more

19   favorable outcome.'" *Leavitt v. Arave*, 646 F.3d 605, 613 (9th Cir. 2011) (quoting *Styers*

20   *v. Schriro*, 547 F.3d 1026, 1030 n.5 (9th Cir. 2008) (per curiam)).  "[C]oercive police

21   activity is a necessary predicate to the finding that a confession is not 'voluntary' within

22   the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v.*

23   *Connelly*, 479 U.S. 157, 167 (1986).  Here, although the interview transcript indicates that

24   Lizardi was asleep when detectives entered the interview room, there is no indication that

25   Lizardi's mental state was so diminished that he was susceptible to coercion, or that the

26   detectives recognized Lizardi's weakened state and took advantage of it.  (*See* Doc. 18 at

27   155–60.)  In fact, Lizardi told the detectives that he had not used any methamphetamine

28   that day, and that he had slept recently before his arrest.  (*Id.* at 160.)

1    Under these circumstances, the state court could reasonably conclude that there was
2   no coercive police conduct and, consequently, that a motion to suppress based on coercion
3   would have failed.  The Court will recommend that Lizardi's claim be denied.[4]

4    **IT IS RECOMMENDED** that Petitioner Victor Lizardi's petition for a writ of
5   habeas corpus under 28 U.S.C. § 2254 (Doc. 1) be **denied and dismissed with prejudice**.

6    **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be denied
7   because Petitioner has not made a substantial showing of the denial of a federal
8   constitutional right, and jurists of reason would not find the Court's assessment of
9   Petitioner's constitutional claims "debatable or wrong."  *See Slack v. McDaniel*, 529 U.S.
10   473, 484 (2000).

11    The parties shall have fourteen days from the date of service of a copy of this
12   recommendation within which to file specific written objections with the district court.  *See*
13   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  The parties shall have fourteen days within
14   which to file responses to any objections.  Failure to file timely objections to this
15   recommendation may result in the acceptance of the recommendation by the district court
16   without de novo review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.
17   2003) (en banc).  Filed objections should use the following case number: **CV-19-00061-**
18   **TUC-JAS**.

19    Dated this 1st day of September, 2020.

20
21    Honorable Maria S. Aguilera
     United States Magistrate Judge
22
23
24
25
26
27

─────────────

28   [4]    Lizardi passingly raises a claim of cumulative error.  As none of Lizardi's
     standalone claims have merit, any claim of cumulative error is similarly without merit.

- 10 -